PER CURIAM.
Appellee Lederer sustained injuries when a parked car rolled down the entrance ramp at Forte Towers, the Miami Beach apartment complex in which Mr. Lederer resided. Lederer filed a lawsuit against Forte Towers, Inc. [Forte], and sought damages predicated upon Forte’s failure to maintain and supervise its premises in a reasonably safe manner.[1] The jury awarded Lederer $142,000 but found him 30% negligent. Appellant Forte seeks reversal, contending that the trial court erred in denying a directed verdict in its favor. We affirm.
The circumstances from which this litigation arose occurred when a car rolled down the entrance ramp of the apartment building from the parking area at the top and hit Lederer as he walked down the ramp. He sustained severe and permanent injuries. Although Forte Towers employed a doorman to ensure that cars were parked correctly and posted signs indicating “No Parking on Ramp” and “Please note parking spaces are reserved, see doorman for parking,” Forte allowed another tenant’s frequent visitor to park his car at the building entrance at the top of the ramp. As Mr. Lederer walked down the ramp, the visitor’s unattended car rolled down and hit Lederer.
On appeal, Forte challenges the trial court’s denial of a directed verdict. We find that the trial court properly refused to enter a directed verdict “since a case should never be withheld from the jury unless, as a matter of law, no proper view of the evidence could possibly sustain a verdict in favor of the nonmoving party.” Sears, Roebuck & Co. v. McKenzie, 502 So.2d 940, 941 (Fla. 3d DCA), review denied, 511 So.2d 299 (Fla.1987). That standard was not met.
The record contains evidence from which the jury could reasonably conclude that Forte was negligent[2] in failing to maintain and supervise the area in a safe manner when it permitted drivers to park their cars without supervision. At trial, an expert witness testified that the parking configu *402 ration may have been responsible for the accident. The expert witness recognized that elderly tenants prefer walking down the ramp to descending the stairs. He found it probable that cars parked too close to the ramp’s “break point” would roll down the ramp. Furthermore, the jury could have concluded that Forte foresaw such an occurrence from the posting of warning signs and its employment of a doorman to supervise the area. This testimony precluded the court from granting a directed verdict.[3]
Affirmed.
HENDRY and BASKIN, JJ., concur.

. Appellee also alleged that Forte breached its duty of care by violating the South Florida Building Code and the City of Miami Beach Zoning Code but abandoned these claims. The case proceeded on his claim of negligence in the operation of the parking area.

. The dissenting opinion, at 402, n. 1 misconstrues the grounds for Forte’s liability which arose from its failure to maintain safe common areas, § 83.51(2)(a)3, Fla.Stat. (1985), and its failure to supervise the parking area, not from the "architectural or engineering building design” cited in the dissent; claims based on faulty design were abandoned. At 401, n. 1.

.Forte also argues that the court erred in reading section 83.51, Fla.Stat. (1983), to the jury. This statute requires landlords to "make reasonable provisions for ... [t]he clean and safe condition of the common areas.” Section 83.-51(2)(a)3. We find no error. The instruction “contained an accurate statement of the law, ... the facts of the case supported a giving of the instruction and ... the instruction [was] necessary ... to properly resolve the issues in the case." Sears, 502 So.2d at 942.